UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANCINE MARIE OLSON,

    Plaintiff,

v.                                          CASE NO. 2:19-CV-273-FtM-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

This is an action for review of the administrative denial of social security income (SSI) benefits. *See* 42 U.S.C. § 405(g). Plaintiff argues that the Administrative Law Judge (ALJ) erred: 1) by discounting the opinions of her treating psychiatrist; 2) by failing to adequately consider her ability to perform work activity on a regular and continuing basis; and 3) by finding her child-like behavior at the hearing was a charade. She also posits that the ALJ was not properly appointed under the Constitution's Appointments Clause. After considering the parties' joint memorandum of law (doc. 25) and the administrative record, I find that the ALJ's decision is not supported by substantial evidence, and I reverse.

    *A.*    *Background*

After a hearing, ALJ Maria C. Northington found that Plaintiff suffers from the severe impairments of bipolar disorder with depression and anxiety (R. 41). She found that Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, thus the paragraph B criteria were not satisfied (R. 43). She also found that the paragraph C criteria were not satisfied: while her chronic affective disorder causes more than a minimal limitation on her ability to do basic work activities, there was no evidence of repeated episodes of

1

decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predictive to cause her to decompensate; or current history of one of more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. The ALJ further found no evidence that Plaintiff's psychiatric impairments result in a complete inability to function independently outside the area of her home (R. 43). In light of all this, the ALJ concluded Plaintiff has the residual functional capacity to perform a range of work at all exertional levels with non-exertional limitations (R. 43). She specified:

> The claimant has no exertional limitations that implicitly include the performance of sedentary to heavy work. She has no postural limitations with the exception … of no climbing of ropes and scaffolds, but ladders no affected. She has no limits for sitting, standing or walking in an eight-hour workday. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. She is to perform no work with vibratory tools or equipment. She retains the capacity to understand, remember and carryout simple instructions and perform simple routine repetitive tasks as consistent with unskilled work. In the course of work, the claimant is to have no contact with the public with the exception that incidental contact is not precluded. The claimant is to have only occasional contact with coworkers and supervisors, occasional being defined as occasional interaction and coordination, but not necessarily proximity to the same.

(R. 43-44). After consulting with a vocational expert, the ALJ concluded that Plaintiff can perform jobs as a hand packager, warehouse worker, electronic worker, small product assembler, table worker, and final assembler (R. 49). The Appeals Council denied review (R. 1). Plaintiff, after exhausting her administrative remedies, filed this action.

### B. *Standard of Review*

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of such relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted).

The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    *Discussion*

        1.    *Plaintiff's treating psychiatrist*

Plaintiff argues the ALJ did not have good cause for discounting the opinions of her treating psychiatrist, Manuel Gallego, M.D. who treated her at the Community Care Clinic from July 2016 to September 2017 (R. 583-645, 754, 757). Dr. Gallego's July 22, 2016, office note reflects that Plaintiff's chief complaints were panic attacks and post-traumatic stress disorder ("PTSD"), and a mental status examination on that date revealed she was well-groomed and clean but her behavior was "agitated, impulsive, and disruptive and cooperative, pleasant, and eye contact" (R. 302). Dr. Gallego noted it was "difficult for her to maintain attention," her mood was "irritable, labile, and angry," her affect was "congruent to thought content and anxious," her insight was "impaired," and her judgment was "intact" (R. 302). He diagnosed PTSD and bipolar II disorder (R. 303). After serving as Plaintiff's psychiatrist for over a year, Dr. Gallego completed a mental RFC questionnaire in September 2017, opining Plaintiff's bipolar disorder with depression satisfied the criteria for Listing 12.04 (R. 673). He opined that Plaintiff has "very extreme" limitations (defined as limited 65% of the time "Catastrophic and Very Severe") in the areas of understanding and memory, sustained persistence and pace, social interaction, and adaptation (R. 670-71). Due to these extreme limitations, Dr. Gallego concluded Plaintiff has been unable to work since August 1, 2016 (R. 671).

4

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. § 404.1527(a)(2)). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179 (*quoting Phillips v. Barnhart*, 357 at 1240 n.8). Additionally, the ALJ must state the weight given to different medical opinions and the reasons therefor. *Id*. Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5).

In her decision, the AJ weighed the medical opinion evidence. She stated:

> Regarding the medical opinion evidence, the medical record contains opinions from treating, and non-examining physicians regarding the work-related restrictions imposed by the claimant's impairments. The record contains a Questionnaire completed by Dr. Manuel Gallego, one of the claimant's practitioners in which extreme to very extreme difficulties are indicated in the following areas: Understanding and Memory; Sustained Concentration and Persisitence; Social Interaction; and Adaptation (Exhibit 9F, pages 1

to 3). In another Questionnaire, Dr. Gallego indicated the claimant's bipolar disorder
with depression meet the criteria of listing 12.04 (Exhibit 9F, pages 4 to 6). The
undersigned does not concur with Dr. Gallego's opinions and has accorded these opinions
little weight, as the extreme limitations he denotes are not consistent with his own mental
status examination findings in 2016 and 2017 (Exhibit 8F). Further, the global
assessment of functioning (hereinafter GAF) scores of 42 and 43, assigned by Dr. Gallego
in 2017, are not reflective of extreme mental limitations, and have also been accorded
little weight, as these scores are inconsistent with the evidence (Exhibits 7F, page 6, and
10F, page 5).

(R. 47). From the face of the decision it may seem that the ALJ properly considered Dr. Gallego's opinions, but when viewed in light of the record evidence and the regulations, I cannot conclude the decision is supported by substantial evidence. It is undisputed that Dr. Gallego is a specialized treating physician (a psychiatrist) who treated Plaintiff for at least fourteen months (beginning prior to her onset date and lasting through the time the ALJ's hearing). And he is the only treating doctor who has submitted opinions. His opinions are consistent with the bulk of other evidence in the file, including school records and opinion evidence from Plaintiff's therapist, Estefan Farag, LCSW (who treated Plaintiff along with Dr. Gallego at the Community Care Family Clinic) and her targeted case manager, Barbara Galloway. While these "other sources" are not "acceptable medical sources," the ALJ should consider such opinions nonetheless. *See* 20 C.F.R. §416.927. Farag's office notes describe Plaintiff as anxious and depressed causing an inability to maintain relationships and interfering with household activities (R. 291, 299, 303, 308, 316, 318, 589, 597, 601, 608, 615, 633, 637, 644, 647, 651, 751, 755, 759). School records indicate absenteeism contributed to her failing grades, however the records also consistently document problems with "processing and retaining information" (R. 534). "Francine's documented disability interferes with her ability to sustain the stamina within the general curriculum. She also has difficulty processing and retaining information. She tends to be easily distracted and unorganized. She benefits from redirection and reminder of due dates" (R. 533). At the September

2017 administrative hearing, case manager Galloway testified she was appointed as Plaintiff's case manager in August 2016 based on a referral from Community Care Clinic. Galloway testified she had worked with Plaintiff for a year and a month (R. 75). She described her primary role is to "ensure that her mental health is stable." According to Galloway, her duties entail:

> … making sure she takes her medication every day, and as prescribed. I see her a minimum of once a week, sometimes it's twice a week. But for the most part, it's once a week. But – to make sure she's taking her medication, that she is attending all of her mental health appointments, whether it's individual counseling, seeing Dr. Gallego for med maintenance, and if she has medical appointments, to make sure that she attends those. And all of that encapsulates to making sure that she has transportation scheduled for those appointments. And then everything else that would help ensure that her mental health is stable, to make sure she has housing, that she has just her needs met, so that she can reside in the community independently.

(R. 75-76).

A more complete description of the targeted case manager's duties is in the administrative record. These duties include: 1) monitoring for attendance and compliance with counseling services and Dr. Gallego; 2) monitoring for medication compliance once a week; 3) linking, monitoring and advocating for her substance abuse free lifestyle; 4) linking, advocating, and monitoring her treatment needs with medical and dental providers; 5) advocating and monitoring her compliance with terms of the Court as it pertains to her felony charges; 6) monitoring and advocating for attendance and interaction at Selby Mental Health Center; and 7) monitoring, advocating, and linking for her housing needs (R. 575-579). Plaintiff's need for a case worker was re-assessed in February 2017 resulting in the reappointment of a targeted case manager. Reassessment records show Plaintiff "continues to struggle to remain consistent with counseling and medication management. She continues to struggle to secure and maintain a safe, stable living environment. She is currently in the beginning process of court hearings as she has pending felony charges to satisfy" (R. 580).

At the hearing, Galloway testified that the biggest obstacles to Plaintiff holding a full-time job are that she "struggles with following directions and understanding what those directions are" (R. 78). To improve her communication and social skills, Galloway has her "attending a mental health drop-in center [Selby House] three to four times a week" (R. 79). Galloway explained that she sees Plaintiff spends approximately fifteen hours a week receiving services of some kind: Galloway sees her once a week for an hour to an hour and a half; Plaintiff sees her therapist once a week for an hour and Dr. Gallego for medication maintenance every other week; and Plaintiff also attends drop-in hours at Selby House where she attends group sessions (R. 79).

Based on the above record evidence, I am particularly troubled by the ALJ's decision to accord significant weight to the State Agency non-examining psychologist Jermaine Robertson who opined that Plaintiff is not disabled. The ALJ stated she "concurs with Dr. Robertson's opinion," finding it "consistent with the results of mental examinations as well as the claimant's generally functioning on a daily basis and ability to seek treatment as needed" (R. 48). Robertson completed his Mental Residual Functional Capacity Assessment in December 2016, only three months after Plaintiff's application filing/ alleged onset date (R. 109-115). At that time only the following evidence was available for review were Community Family Healthcare Center Mental Health records from December 13, 2016, and Desoto Memorial Hospital records from December 13, 2016 (R. 105). The only record referenced by Robertson is a mental status exam on August 18, 2016 (R. 110). Obviously, Robertson was not able to review the bulk of the treating psychiatrist Dr. Gallego's medical records, Dr. Gallego's opinions, or other pertinent evidence in the administrative record dated December 2016 through September 2017. And, it seems Robertson was unaware that in August 2016 Community Care Clinic referred Plaintiff for the appointment of a targeted case manager to assist her in seeking treatment and ensure she took her medications.

Notwithstanding the fact that Robertson did not review much of the relevant evidence, I note Robertson still found Plaintiff had moderate difficulties in maintaining social functioning, and in maintaining concentration, persistence and pace (R. 109). Of course, these areas are addressed by psychiatrist Gallego, social worker Farag, and case manager Galloway. Even without the opportunity to review their pertinent treatment records and opinion evidence, however, Robertson opined that Plaintiff has limitations in her ability to understand and remember, her ability to sustain concentration and persistence, her ability to interact socially, and her ability to adapt, and opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her symptoms were substantiated by the medical evidence (R. 111). He indicated that Plaintiff "can be expected to understand, remember and complete simple one or two-step instructions and may perform better with well-learned tasks" and also found that she "should be able to function in a stable environment" (R. 112).

Before concluding, I must address Plaintiff's assertions about the inappropriateness of the ALJ"s statements that she "does not concur" with Dr. Gallego's opinions and "concurs" with Robertson's opinions; the ALJ's statement that Plaintiff's GAF scores are "not reflective [of Dr. Gallego's] extreme mental limitations;" and the ALJ's statement that Plaintiff's child-like and exaggerated" behavior during the administrative hearing was "an attempt to portray herself as mentally disabled." I find the ALJ crossed the line from mere observation of Plaintiff's demeanor to application of sit and squirm jurisprudence. By opining that the GAF scores were not reflective of extreme mental limitations, the ALJ substituted her own judgment for that of a physician.[1] In

---

[1] The American Psychiatric Association abandoned the GAF score in its most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) "for several reasons, including its conceptual lack of clarity ... and questionable psychometrics in routine practice." *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-V) 16 (5th ed. 2013). And, even before the American Psychiatric Association abandoned the GAF scale,

9

evaluating her credibility, the ALJ opined that Plaintiff's child-like, exaggerated behavior and juvenile outbursts were an attempt to portray herself as a mentally disabled individual since such behavior was not reflected or documented in her mental status examinations. In reaching this conclusion, however, the ALJ ignored the pertinent testimony of Plaintiff's case manager. Concerned about Plaintiff's "child-like," "hyper" behavior, the ALJ questioned Galloway about it. Galloway explained that "pretty much" is "how it's been for the last year that I've worked with her" (R. 77-78). Galloway stated, "Dr. Gallego has … struggled to find a good dose of medication for her, but she does well sometimes, and then – since like kind of after the hurricane, she's been a little bit more hyper, as far as just being restless a lot. And I think that is just not so much trauma from the hurricane, but just still trying to get back to a normal for her." (R. 78). In this circuit an ALJ may consider a claimant's demeanor and disposition at the hearing, but it is well-settled that an ALJ may not arbitrarily substitute her own hunch or intuition for the diagnosis of a medical professional. SSR 16-3p ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation."); *see generally Johns v. Bowen*, 821 F.2d 551, 556-557 (11th Cir. 1987) (finding ALJ who determined claimant did not appear to be in great pain at hearing and did not need all the pain medications prescribed to him improperly engaged in "sit and squirm" jurisprudence); *Freeman v. Schweiker,* 681 F.2d 727 (11th Cir. 1982) (remanding where core of the ALJ's assessment was a medical one, i.e. "he exhibited no significant observable physical signs which could be related to constant pain").

---

"the Commissioner declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs' and indicated that GAF scores have 'no direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000).

Admittedly, an "ALJ is not required to accept the opinion of a treating doctor, even one with expert credentials, if the ALJ finds that the opinion is not supported by the doctor's own records or the record as a whole." *Kent v. Acting Comm'r of Soc. Sec. Admin.*, 651 F. App'x 964, 967-68 (11th Cir. 2016). And, although there is truth to ALJ's notation that Dr. Gallego's mental status examinations were oftentimes "normal," the records overall depict a young lady diagnosed with bipolar disorder, generalized anxiety disorder, severe major depression with psychotic features, and PTSD; prescribed Lamotrigine (bi-polar disorder), hydroxyzine (anxiety), and clonazepam (panic attacks) (R. 257); and assigned a case manager to monitor her mental health status. The ALJ rejected the treating psychiatrist's opinions in favor of those of a non-examining psychologist who reviewed the file in December 2016 (only three months after the alleged onset date and nine months before Dr. Gallego rendered his opinions). And she erred by injecting her own opinions into the mix. Accordingly, I conclude the ALJ's decision finding Plaintiff not disabled is not supported by substantial evidence. Remand is needed.

### 2. *remaining substantive issues*

I have already addressed Plaintiff's assertion that the ALJ erred by finding that she exaggerated her behavior at the hearing. On remand the ALJ should re-evaluate Plaintiff's subjective complaints and demeanor in accordance with the applicable regulations. Plaintiff also asserts the ALJ erred by failing to adequately consider whether she is capable of performing work activity on a regular and continuing basis. Given her moderate limitations in her ability to maintain concentration, persistence and pace, on remand, the ALJ should address Plaintiff's ability to perform work activity on a regular and continuing basis.

### 3. Appointments Clause

Finally, as to Plaintiff's assertion that the ALJ was not properly appointed and lacked authority to decide her case, I find no merit. *See generally Lucia v. Securities and Exchange Comm.*, __ U.S. __, 138 S.Ct. 2044 (2018) (holding petitioner raised "timely" challenge to appointment of ALJ who heard his case because he first raised issue during administrative proceedings before SEC); *Sims v. Apfel*, 530 U.S. 103, 108 (2000). Plaintiff, as the Commissioner notes, should have raised this complaint earlier. By failing to do so, Plaintiff waived or forfeited her Appointments Clause challenge. *See* doc. 25, p. 45, citing *Freytag v. Comm'r of Internal Rev.*, 501 U.S. 868, 878 (1991) (finding Appointments Clause challenges "non-jurisdictional" and this subject to waiver or forfeiture if not raised in timely manner). The Court rejects Plaintiff's argument that based on *Sims v. Apfel,* U.S. 103 (2000) her Appointments Clause challenge is not untimely. Other courts have rejected this argument already. *See e.g. Shalibi v. Berryhill,* 883 F.3d 1102, 1109 (9th Cir. 2017) (declining to extend *Sims* to issue not raised before ALJ); *Miaolino v. Comm'r of Soc. Sec*, case no. 2:18-cv-494-FtM-UAM, 2019 WL 2724020 (M.D. Fla. July 1, 2019) (explaining that "*Sims* concerned only whether a claimant must present all relevant issues *to the Appeals Council* to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us.'"); *Jones v. Berryhill*, 2019 WL 2583157, n.10 (collecting post-*Sims* cases rejecting assertion that claims need not be exhausted in social security administrative proceedings).[2] *See also Cirko on behalf of Cirko v.*

---

[2] As the *Miaolino* court indicated, in *Lucia* the Court did not make a blanket finding that all ALJs are subject to the Appointments Clause, but only that SEC ALJ**s** were so subject. At the time of the Supreme Court's decision, the SEC had only five ALJs. *Lucia*, 138 S.Ct. at 2049. In contrast, there are currently over 1,700 Social Security Administration ALJs. *Miaolino, supra,* at *7 citing ALJ Disposition Data FY 2019, *available at* [https://www.ssa.gov/appeals/DataSets/03_ALJ_Disposition_Data.html]. The SSA conducts hundreds of thousands of hearings and adjudicates hundreds of thousands of disability claims

*Comm'r of Soc Sec.*, 948 F.3d 148 (3rd Cir. Jan. 23, 2020) (holding exhaustion not required for Social Security disability claimants because both characteristics of Social Security Administration review process and rights protected by the Appointments Clause favor resolution of such claims on the merits).

    D.    *Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The ALJ's decision is REVERSED, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Order; and

    (2) The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on February 20, 2020.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

---

each year. As the Commissioner notes, the Social Security Administration has annually received about 2.6 million initial disability claims; annually completed about 689,500 ALJ hearings; and in 2018 took on average 809 days to process a claim from its initial receipt to an ALJ decision and more than 850,000 people were waiting for ALJ hearings. *See* doc. 25, n.13, citing SSA's Annual Performance Report, Fiscal Years 2018-2020, at 4, 42, 46 (2019).